Good morning. I'm Stephen Amity. I represent the appellant Carter&Burgess, and I'd like to reserve two minutes for rebuttal, if I may. Granted. The District Court erroneously concluded in this case that the indemnification provision at Section 2922 of the parties' agreement not only covered third-party liability, but also covered ACA's own direct claims against Carter&Burgess for ACA's first-party damages. This is a standard indemnification agreement that is contained in one way or another in many agreements, and it says basically that Carter agreed to indemnify, hold harmless, and protect ACA against any and all claims, losses, etc. This court in Travelers said that similar language had the only logical meaning of similar language was that that was triggered by third-party liability. It did not encompass a party's first-party claims for damages in its own right. Now, Judge Hillman did not have the benefit of Travelers, and certainly did not, he did not have the benefit of the recent case at the Appellate Division Investor Savings Bank. Correct. Correct. And this court had to predict basically in the Travelers case what a New Jersey court would have ruled because you said you didn't have the benefit of any explicit authority on that point, but we now have the benefit of that in the Investors, and I think they went a step farther than you did in the Travelers case, and they said it's axiomatic. You can almost categorically say now that this type of indemnification language- It's not quite right. You can categorically say. You can categorically, absolutely. So we have Travelers, we have Investors. So the linchpin of the district court's decision, we believe, is clearly erroneous. Yeah, but there are alternatives where we could still affirm, right? There are, but what I want to get to as an initial stage here is the interplay between the damages cap and the limitation on damages in Section F- Well, if the indemnification goes out, you're into the damages cap. Correctly. Because the indemnification, because of the supposed conflict between the indemnification provision and the limitation on damages, they struck the limitations. Right. So if the indemnification provision is properly construed, then there's no inconsistency between that and the damages cap. And you're into the limitation, the damages cap, which is 3,000,004. Correct. And that damages cap doesn't differentiate between direct damages or consequential damages, contract damages, negligence damages, or fees. It's all inconsequential. Well, that's a whole other question. And that's- What is included within the damages cap if you get to the damages cap? And what are direct damages and what are not direct damages? And whether attorneys' fees are awardable, I mean, they were granted on the indemnification provision, and are they just included under the cap if it's awarded under the contract claim? Because it was only awarded under the tort claim. Some of the little issues that are percolating in this case. And that's exactly what I'd like to get to now, Judge. But you do have a tort verdict, don't you, that you haven't challenged? We have challenged- Of 6, 7,000,006? Well, the tort concept, under New Jersey's economic laws doctrine, tort can't be used as a means to expand your damages. But you didn't raise that below, though, right? It wasn't raised below in that fashion, but at every step of the way, Carter objected to the submission of the damages. And that's what the consequential damages- Wait a minute. Carter objected to the contract damages. Carter objected to the recovery of damages of any- under any strife- Where did you move to dismiss the negligence claim? There's no motion to dismiss the negligence claim. But under the economic laws doctrine, that doesn't expand the damages you can get. And here's my point, Judge. Well, you didn't raise the economic laws doctrine either. It's a pure question of law that this Court can apply in this case. Even though it was never- Even though it was never raised before. There are no legal counter steps that could have been taken in the court below. So do we review that under a plain error standard because it wasn't raised? Yes, there's a plain error standard. But I don't think you even need to get to the difference between a negligence claim and a contract claim for the simple reason that what we're talking about here is the applicability of 136. And the mere fact that you may have a negligence claim doesn't eviscerate or vitiate that clause. Yeah. Under 136, it would seem to me that the negligence claim is clearly subsumed within the contract claim. Absolutely. So why did you have two claims? Why? Why? I can't answer that. Well, then why don't we move beyond that? Let's get to this. Let's go a step further than the damages cap, which, as I said, once again, it doesn't differentiate between negligence or contract. It encompasses both. But what I believe ACA attempted to do here is they tried to parse out this reasonable promptness provision. And obviously, you have to read all these contracts as a whole. And if you start with the standard clause in the agreement, which is 1232, that is just stating the normal standard of care that any professional has, be it a doctor, a lawyer, a design professional. But then parties embellished that. They elaborated on that in the section that ACA is referring to. And that's 2923. And what they said, with respect, and these two have to be read in conjunction, these two clauses, because they relate to the same subject matter. They said that C. Carter has to perform its services with such reasonable promptness as to cause no delay in the work. And they have to perform it in a manner consistent with professional skill and care for the same size design professional group and in that locality. It's basically a locality rule. So all this was was an elaboration of the standard of care that was in the standard agreement. Now, ACA has attempted to elevate this reasonable promptness into a direct promise not to delay the construction project. And they say that any breach of that, that any damages that naturally flow from that, by definition, are transformed into direct damages, not consequential damages. And the district court, of course, agreed with that. The case that ACA relies on for that concept is, of course, the Pencro case. Pencro was very simple. The Sprint hired Pencro to collect delinquent bills for it. There was a value to the services that Pencro was going to give under that contract. And Sprint wrongfully terminated that agreement. And all Pencro sought was the benefit of their bargain, the lost profits that they would have made under the contract, under the service agreement. There was a waiver of consequential damages there. And what the court said in Pencro was that those damages, even though they were lost profits, were not consequential. They were benefit of the bargain damages. And that's the principle that the district court applied here. But what you have here, and I think the Tractable case from the Second Circuit makes the distinction crystal clear, what you have here is not the direct benefit of the bargain, but you have lost profits on secondary collateral agreements. And, of course, I'm referring to the lease agreements that ACA had with its proposed tenants. And that's the benefit of the bargain that it's trying to recoup. And that is, by definition, it's a secondary agreement, a collateral agreement. And that is, in a nutshell, is the difference. Well, you've got, look, the contract itself, Section F, Paragraph 4 of the proposal bars consequential damages. Correct. And, in fact, it even says, you know, including but not limited to loss of use, loss of profit, or claims for delay. Correct. And we believe that when you read that proposal, Paragraph F, Section 4, when you read the mutual waiver of consequential damages, and when you read the incorporated AIA contract, there's no, can't be any reasonable dispute, but that the damages that were recovered here, except for, except for the construction fixing costs. Except for the 1-3. Right. Except for the 1-3, which we conceded direct damages to which they're entitled. That all of those, under any definition of consequential damages, are clearly consequential, because they relate to secondary agreements, lease agreements that the developer had with proposed tenants. And that's. You can see, you, you say, as an alternative relief, the alternative relief you seek, would be for entry of a judgment for $3,004,29565, which was the amount. Correct. That you were paying. The value of the contract. The value of contract.  Would that $3,004,29565 include attorney's fees? Yes, it's, it's, it's all in. It says the Section F says it includes expenses and attorney's fees will be. Well, H says, but, but H says attorney's fees will be in addition to the limitation of liability. And once again, I think you have to undertake an inconsistency analysis like the district court did, and. Well, the, the district court only dealt with attorney's fees in terms of the indemnification provision. Right. It said that H doesn't apply because it's in conflict. If, if Section H gives ACA the right to recover attorney's fees, it should only be at the risk of staying the obvious on recoverable damages, which would be the $1.3 million. Because, as you pointed out, Judge, are. But that's different. That's a different question. I'm saying, would the attorney's fees that you'd be entitled to receive be, that they'd  Well, if you apply the damages cap, they would be subsumed within that cap because it includes expenses, which we believe is a reasonable interpretation. But, but, but, but, H says specifically legal fees and costs. Correct. That's in, and it says in addition. Right. That, that issue, Judge, I guess the best way I can answer it is I understand what you're saying only arises if you reject our initial threshold argument, is that they should be limited to the $1.3 million, and to the extent they're entitled to any attorney's fees under Section H, they're limited to that. I'm into your alternative argument now. I'm just asking if you say that we could enter, or to direct the entry of judgment for $3.4 million, would that include attorney's fees? Would it include prejudgment interest? Or is that something that would be beyond the cap as well? No, I believe that would be subsumed in the cap as well. I guess hope springs eternal. I thought maybe you'd say, well, it includes everything. It doesn't include everything. I think it was all-encompassing, Judge. So, in conclusion, what we're really asking for here is for a plain reading of the contract. We're not asking for any across-the-board rule because this was a specialized contract. The question that ACA never really comes to grips with is why, in this heavily negotiated contract, where there were sophisticated deal counsels, sophisticated business entities, if they intended 136 to have no effect or to be trumped by any of these other provisions, why then didn't they just strike it? And as a commentator's— Well, I think they'd respond that you had a form contract. You negotiated specifically this provision for delay damages. And if we go with what you're saying, that that specifically negotiated provision would just be rendered meaningless, right? Well, no, because all that does is create a standard of care. The issue here is not what the standard of care is. What damages are recoverable if that standard of care is departed from? But delay is specified as a consequential damage that is not included. Absolutely. And the genesis of this entire mutual waiver of consequential damages, of course, was the Perini case in the New Jersey Supreme Court that dealt with lost profits due to delay. And the New Jersey Supreme Court said those were delayed damages. And, of course, I could, you know, going back to the attorney's fees, I think it's probably fair to say that attorney's fees are not considered consequential damages under New Jersey law, which might support the argument that they're in addition to any, to the limitation of damages. There is, there is, Judge, there is a Section H that allows for the recovery of attorney's fees. Yeah. You're correct in that regard. Thank you. May it please the Court. My name is Joseph Badapagli. I represent Lenox City Associates. There are three independent bases upon which this Court can affirm the judgment. The first is, as Judge Hillman held, there was a duty not to delay. Well, before you get to the duty not to delay, I think we have to cut right to the chase. You have fought the good fight on the indemnification provision. And you tried to distinguish travelers. And Judge Hillman never had travelers before him. Now we've got investor savings, which is very, very clear. And the bulk of Judge Hillman's decision is based on his finding that the indemnification provision will cover first party claims. Investor savings and travelers both say that's just not so. So if that reading is correct of those cases, I mean, the guts of Judge Hillman's decision is wrong, isn't it? I mean, that's a yes or no on the limit. If the indemnification provision goes, you are into the limitation of damages provision. I don't believe you're into the limitation of damages provision. Or the tort judgment. You have the tort as well. But also the cap is in the terms and conditions of a draft agreement, which we don't believe was incorporated. But also Are you going to that? I'm sorry? Are you going back to that? Well, Your Honor, we don't have to go back. Let's assume it's incorporated. If the terms and conditions are incorporated and the indemnification provision does not apply, you are or you're not into the limitation of damages provision. No, because the only time a cap is incorporated is if it doesn't conflict with any other provisions in the main agreement. What's it conflicting with now? It conflicts with the requirement that Carter carry $5 million of professional liability insurance on each of the contracts. That's $10 million of insurance when the fees at that time were projected to be under $2 million. There was a clear indication that there was no cap. Otherwise, there'd be no reason to require Carter to carry $10 million of professional liability insurance. That sounds like an argument that because you got the insurance to cover it, you ought to cover it. No, there was an absolute requirement to carry that insurance. Because you are carrying insurance to cover it, we ought to recover it. That's your argument. I don't believe so, Your Honor. I believe that's an indication by the intent of the parties that the cap did not apply. So therefore, it conflicts with the main body of the contract. That comes as a surprise, I'm sure, to your friend across the aisle. But let me ask you, just put the law side for a moment. This is a matter of fundamental fairness. You paid them $3.4 million for the project, for the walk. And it was built. And now you have a verdict, and let's include the attorney's fees that were awarded and the prejudgment interest that was awarded. That's almost four times what you paid. Does that make any sense? Yes, Your Honor. We asked Carter to carry the insurance to cover whatever we asked them to assume as far as financial responsibility. We asked them to carry $10 million. They ultimately carried $15 million. Insurance will pick up all this. The parties here are very sophisticated parties. Carter is a huge company, and we asked them to assume all financial responsibility for their errors and omissions as it affects the timing. Supposing you had paid them $9 million, then that would be the limitation of damages here, wouldn't it? No, I still don't believe, because I don't believe the cap. Well, the cap in the contract doesn't say $3.4 million. That's the amount that they were paid. That's the cap. So if they were paid, if whatever happened happened, they were paid $9 million, would that not be the cap in this case? No, I don't believe the cap is incorporated to the contract because the party's clear intent was there was no cap. And that is demonstrated by the fact that they negotiated this provision. Then what does the limitation of liability slash damages provision mean? Why is it in there if that's not what they intended? It was in a document that was a draft agreement. But the proposal is incorporated into the agreement. The agreement says so. To the extent it's not and doesn't conflict with the main body, the main contract. So where is the conflict? Let me just ask it one more time. Now that the indemnification provision conflict will probably, I speak only for myself, go. Where is the conflict now? I don't believe the, because of the insurance provision, there is a conflict. And do you have anything to say other than that? I mean, you're hanging your hat on that, are you? Well, I'm hanging my hat on the fact that there's the indemnity provision. Oh, no. Are you serious? Yes, Your Honor. Are you? Okay. As a matter of New Jersey law, is it your position that first party claims are covered under the indemnity? Yes, Your Honor, because the investors case never addressed that issue. The investors case. The investors case relied on the district court's case in Travelers. And Travelers clearly said that first party claims are not absolutely barred in New Jersey. Both courts were concerned with a particular situation. Investors, for example, was concerned with a borrower having to indemnify a lender for a lender's own wrongdoing. Let's just cut to the chase. I'm reading from investors. It is axiomatic, as Judge Dubois observed in Travelers, that an indemnification agreement must be based, must be based, upon the indemnity's claim to obtain recovery from the indemnitor for liability incurred to a third party. Accordingly, the indemnity provision here has no application when presented as a shield against claims asserted against indemnity by the indemnitor. I mean, it's only when the indemnity is found liable to a third party that it may be triggered. I mean, what could be clearer than that? In addition, of course, you never even made a claim for third party. We did make a claim for third party, Your Honor. In the complaint. I'm sorry? This is first party indemnification. No, there is, there are damages, though, that we covered. Okay, go back and tell me why investors does not cover this case. Investors is not a reasoned case that this Court is bound by. It does not really talk about what New Jersey law is. It was addressing a counterclaim. What did it just do? What did it just do? What did I just read? I think it was a casual statement that, unfortunately, I think it's inaccurate statement of New Jersey law. It's the holding of the indemnity claim. It's talking about trying to bar a counterclaim. And I don't believe that this Court was faced with is a first party or third party claim. It's unreasoned. In fact, what they did do is that Court relied on the District Court and Travelers. And Travelers is very clear and consistent with all of the other circuits. It's clear that first party claims are not absolutely barred. And this Court is not bound by investors by any stretch of the imagination. There's a Travelers case that says you have to look at the context in which the word indemnity is used. Our indemnity is used in conjunction with errors and omissions. Errors and omissions affect only the cost and timing of construction. And that is a first party claim. You have to look at... Yeah, frankly, I think you might spend your time better arguing some other parts of your argument. For instance, whether attorney's fees are included in the cap. Attorney's fees are not included in the cap for several reasons. Section H of the proposal allows attorney's fees. The cap never says the cap applies to attorney's fees. You can't say expenses mean attorney's fees. Otherwise, you'd be able to recover attorney's fees when you have any other type of breach of contract that says you get expenses. Our attorney's fees have to be specifically stated. So it's not stated in the cap. Section H provides for it. And ACA recovered for third party claims. In addition to the $1.3 million, they recovered almost $2 million in addition. No, but they never sued for third party... Yes, Your Honor, they did. In the complaint? No, no. Yes, Your Honor. It was very clear at the trial court... Let's go back to the attorneys. Go back to Judge Roth's question. What's included in the cap? What about prejudgment interest? Prejudgment interest is not included in the cap. You get that through the negligence claim, which they waived. Can they get prejudgment interest under the contract? Yes, it's discretionary. But Judge Holman hasn't dealt with that. No, because he relied on the negligence, which Carter has waived. And they participated in that. But, Your Honor, just to go back to... We did recover third party claims. The money we paid... In fact, this $1.3 million, we recovered that under 2922. That's a direct damage claim. It was for payments we made to contractors. That's for construction... Additional construction costs because of errors. Your friend across the aisle concedes that that's a direct damage, and they're liable for that. I believe the delay damages are direct as well. What do you do about the provision, the waiver of consequential damages in Section F, Paragraph 4, which says you don't get claims for delay. They're consequential damages. That is not a definition, as in the Pencro case as illustrated. When you have words... I'm not looking for a definition. I'm saying it says here, under no circumstances shall CMB be liable to ACN A4 claims for indirect, special, or consequential damages, including claims for delay. But when you have... What could be clearer than that? When you have... That's an example of a consequential damage. That is not defining all delay damages as consequential. As the Pencro court has explained, when you have language, including but not limited to, that is not a definition. That's just... Yes, these are examples of consequential, but that same damage could also be direct, given the circumstance. And in our situation, the delay damages are direct under 2923, the duty not to delay. But even if you listen to Carter's argument, this is just a statement of standard of care. That statement of standard of care, because it's in a contract, because it becomes a contractual obligation. When you breach a contractual obligation, whether you call it a standard of care or a direct duty, that's a breach of contract. And damages flowing from that breach are direct. They're tying that standard to delay. So regardless of whether you call it just a separate duty, a contractual duty, or if you call it a standard of care, once you include a standard of care in a contract, it is a contractual obligation, the breach of which is a... Could you focus on this tort claim a little bit? Yes, the tort claim. What about the economic loss doctrine? Does it cover... Does this bar your negligence, your verdict, basically? No, Your Honor, because the economic loss says that if you do have an overlap, a complete overlap, negligence would be barred. But in this instance, Carter has to demonstrate compelling reasons for the court to take up that issue. That Carter participated in drafting the verdict sheet, which we told the jury, jury, there is an overlap, essentially, between negligence and breach of contract. Jury, don't worry about the overlap, because ACA gets only the higher of the two amounts. So Carter participated in the very problem now Carter is confronted with, and essentially told the jury, don't worry about it. There is an overlap. Do we review that under a plain error standard? No, Your Honor. I believe that the court should take that issue up, because I don't believe Carter has taken up that issue on appeal. We had no opportunity whatsoever at the trial level to differentiate damages between negligence. Well, does the economic loss doctrine apply here? I mean, aside from what you say, I know you say we shouldn't be considering it, but assuming we go under plain error review. Economic loss doctrine would apply when you have a negligence and breach of contract claim, but for professional malpractice, there are instances where you can carve out a negligence claim and also have a breach of contract claim. It really has to do with the overlap between the two. And in this instance, we went to the jury and told the jury, don't worry about this overlap, because you have, because ACA is only going to get the higher of the two amounts. So you're saying you should get 7-6 on the tort claim? You get 7-6 on the tort claim. Plus attorney's fees, plus prejudgment interest. Yes, Your Honor. And essentially because they did not specifically raise it below. They did not. They went to the jury, told the jury, you can't interest. No, no. Yes. Yeah. And assuming we were to look at it under plain error review, following Judge Chigares' thought, is it not plain error when they're liable to pay almost, because if you add the attorney's fees that were originally given, although depending, that may change, and you add prejudgment interest, you're almost back to $13 million again. Yes. Do you think that's the right result under plain error? Don't you think that perhaps the fairness, the integrity of judicial proceedings might be questioned by the public if that were to happen when they only were paid $3 million for and the project got built? No, Your Honor. When ACA, an owner, contracts with a designer, a very large designer, and says, you're going to assume all risk, and I want you to carry insurance so the insurance will fund this. And that is exactly the situation here. We have insurance that's going to fund this now. So you're saying, going back to Judge Roth's question, when there is $10 million of insurance, then you can get the $10 million here. No, I, that's not. That's really what you're saying. No, I was just, I was addressing this public policy issue. No, I don't believe that the issue is just limited to the amount of insurance, you know, with the recovery. Is it your argument, just because they're required to take out a $10 million policy, the parties must have agreed that that would be a possibility, they could buy out the whole policy? What they did, and when they added this provision, 292, to deal with errors and omissions, they agreed to shift all financial responsibility for errors and omissions to Carter. That was the goal. That's why the parties added this to this forum concept. So that the rest of the provisions, the provisions in the proposal, the waiver of consequential damages, the limitation of liability, et cetera, et cetera, are nullities? Yes, because this provision, this Article 292, was to address errors and omissions. That, for lack of a better word, trumps everything that went before? Yes, Your Honor, that trumps what was in the terms and conditions of another draft agreement, which the parties did not use. They abandoned that document. But that's not what the agreement says. The agreements say the proposal is incorporated in the agreements to the extent not in conflict. So where there is no conflict, and I suggest I don't see any, you say that they don't count? I say there is a conflict. The only conflict you can point to is this error and omissions thing, really? No. I point to the indemnity as well. Oh, okay. The indemnity provision. We're back to indemnity. Yes, Your Honor. These parties, between owner and architect, decided that they used the language indemnity and indemnify and hold harmless. They used the word defend in there. And they didn't ask Carter to indemnify ACA for ACA's own wrongdoing, only for Carter's wrongdoing. That was a clear intent for the parties to shift the financial responsibility to Carter. And they asked Carter also to carry insurance to fund that. And in that same provision, which is unheard of in these architect agreements, they added that to the modification. They had this duty not to delay. This was very important to ACA, and they added it. And they asked this very large company, Carter, to assume that risk for what was going to be a very substantial payment. And if it happens to go beyond the payment, I don't believe that that is of significance because these other provisions in that article deal with the issues before us. That is, there are omissions, and it damages the flow from that. Thank you. Rebuttal. Thank you. ACA had absolutely no problem drafting a contract the way they say this one was drafted when it came to Keating, who was another defendant originally. And what they did, and this is A-164 and A-177 of the record. In their contract with Keating, they included a time is of the essence clause that was coupled with a liquidated damages clause. So if you delayed, it's so important to us that you not delay. There are going to be liquidated damages. Look at the insurance clause, if you will. It is not limited to errors and omissions coverage. It's the full constellation of commercial coverages that you get, commercial general liability, automobile liability, workers' compensation. They completely sweep all that aside and say that this was a funding mechanism for their indemnification agreement. And that's not what it is. It is a standard insurance procurement provision. And as Judge Roth pointed out, it's putting the cart before the horse to say that because there may be insurance that covers a particular loss, there also is legal liability. Insurance policies don't cover until and unless and until there's legal liability. So this whole notion that this insurance procurement was somehow a funding mechanism with their interpretation of the indemnification agreement, the only way you can even begin to entertain that is to strip all the other coverages aside. Because if you see that, you see it wasn't. And incidentally, they could have said in that insurance provision, they could have said, had they truly meant it, and not just arguing lawyers' arguments, they could have said, and for any claim that's covered by this insurance, 136 is out the window. Section 4 of the proposal is out the window. They didn't do that. They could have done it very easily. So they're just giving too much credence, too much importance, significance to a standard. You know, they say it's customized. It is. But within the industry, and that's what the proof was, Perrini case and all that, all these clauses are typical. The only other thing I'd like to address, because I see my time is out, is just this concept of the waiver of the negligence claim. The essence of the economic loss doctrine, I explained in my brief, hopefully, why you can review that under plain error doctrine. But what I really want to get to the point here is that it doesn't matter whether they say that it's a negligence theory or a contract theory. Even under a negligence theory, you don't vitiate the party's contract. You can still look to the limitations on damages, the other parts of the agreement. So calling this a negligence claim, whether you say it's under the economic loss doctrine, whether you look at the terms of the contract, doesn't get them any farther than if they pursue it as a contract claim. Yeah. Would you turn off the tape? Would counsel approach the bench, please?